Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
E. Tory Beardsley (SBN 031926)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

*Attorneys for Plaintiffs*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Athena Boggs and Jared Miiller, a married couple, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Tesla General Insurance, Inc.,

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. PARTIES ..... 5

III. JURISDICTION AND VENUE ..... 6

IV. GENERAL ALLEGATIONS AS TO ARIZONA LAW ..... 6

A. Overview ..... 6

B. Every insurer is required to offer UM/UIM limits equal to liability limits, and if it does not, equal limits arise as a matter of law. ..... 8

C. If an insurer fails to comply with the notice requirements of A.R.S. § 20-259.01(H), it must stack coverages when it insures multiple vehicles. ..... 9

D. Tesla's insurance contracts are governed by the implied covenant of good faith and fair dealing. ..... 11

V. TESLA IMPROPERLY REFUSES TO DISCLOSE, STACK, EQUALIZE, AND PAY THE FULL AMOUNT OF MS. BOGGS'S UIM COVERAGES ..... 11

VI. DEFENDANT'S MISCONDUCT REGARDING UM/UIM LIMITS IS SYSTEMIC ..... 25

VII. CLASS ACTION ALLEGATIONS ..... 33

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT) ..... 37

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) ..... 37

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS) ..... 38

PRAYER FOR RELIEF ..... 41

## I. INTRODUCTION

1. Plaintiffs bring this action to establish that Tesla General Insurance Inc.'s[1] standard auto policy includes the amounts of UM/UIM coverages required where an insurer fails to make the written offer required under A.R.S. § 20–259.01(A) & (B) and/or fails to comply with A.R.S. § 20-259.01(H). Arizona law requires every insurer to make a written offer of uninsured and underinsured ("UM," "UIM," or "UM/UIM") coverage with limits equal to liability limits whenever an initial policy is sold. Tesla failed to do this. Each insured thus became entitled, by operation of law, to statutory UM/UIM coverage equal to the limits of their liability coverage for each vehicle. Moreover, where the insured has multiple vehicles insured under a single policy, insureds are entitled to combine (stack) these coverage limits because Tesla has failed to comply with the anti-stacking requirements of A.R.S. § 20-259.01(H). The results of both violations are clear: First, many Tesla insureds are unaware of the coverage Tesla is legally required to provide to them in the form of equalized UM/UIM limits and/or stacked UM/UIM limits. And second, many insureds who were seriously injured in auto accidents have not received the benefits to which they were entitled.

2. Plaintiffs bring this action on behalf of (1) all Tesla insureds whose policies do not contain UM/UIM limits equal to liability limits and (2) all Tesla insureds whose policy covers multiple vehicles but whose claims were not adjusted under their stacked UM/UIM coverages. Plaintiffs seek, among other remedies, a declaration of the policy rights that govern all affected insureds until the defects are remedied.

3. For insureds having unequal limits or multiple vehicles who suffered covered losses and claimed benefits, Tesla calculated payments using coverage limits far below what the law requires insurance contracts such as these to provide, leaving numerous claimants with inadequate compensation. For insureds who have not yet claimed, their

---

[1] Tesla General Insurance, Inc. is referred to herein as "Defendant," "Tesla," or "Tesla General Insurance."

policies contain no notice of the coverage they are actually entitled to. To the contrary, it wrongly understates their coverage, leaving them unknowingly vulnerable if a loss occurs.

4. Through this Complaint, Plaintiffs pray for a judgment that will: (1) declare each Class member's true UM/UIM coverage entitlements; (2) reform all affected policies to accurately reflect correct coverage; (3) immediately notify all Class members of their restored coverage rights; and (4) recover damages for Tesla's failure to pay contract benefits and damages, including punitive damages, for any bad faith conduct in concealing and misrepresenting coverage entitlements.

5. The law on these issues is well-developed and clear. Arizona's Uninsured Motorist Act ("UMA") requires "[e]very insurer writing automobile liability . . . policies" to "by written notice offer the named insured" the option to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits. A.R.S. § 20–259.01(A) & (B). "The statutory requirement of a written offer is absolute on its face," *Estate of Ball v. American Motorist Ins. Co*., 888 P.2d 1311, 1314 (Ariz. 1995), and must be made on a form approved by the Arizona Director of Insurance. A.R.S. § 20–259.01(A) & (B).

6. When an insurer fails to comply with the UMA's written offer requirement, "the appropriate remedy is to impose UM and UIM coverage in an amount equal to the bodily injury liability limits of the policy."[2] *Progressive Cas. Ins. Co. v. Estate of Palomera-Ruiz*, 231 P.3d 384, 387 ¶ 11 (Ariz. App. 2010) (citing *Ins. Co. of N. Am. v. Superior Court*, 800 P.2d 585, 588 (Ariz. 1990)). Here, Defendant failed to make a written offer of UM/UIM limits equal to the bodily injury liability limits on the policy, resulting in underpayments to Plaintiff Boggs and the Classes.

7. In addition, under Arizona law, auto insurers must permit their customers to stack policies or coverages for UM/UIM motor vehicle accident claims unless the insurers comply with two simple requirements: Insurers must both (1) "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of

[2] This remedy is sometimes referred to herein as "equalized" UM/UIM limits or coverage.

stacking," and (2) "satisfy the notice requirement [of A.R.S. § 20-259.01(H) by] informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident." *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 ¶ 11 (Ariz. 2023) (quoting A.R.S. § 20-259.01(H)). Here, Defendant failed to meet the second requirement and yet failed to stack coverages for multiple vehicles insured under a single insurance policy, resulting in underpayments to Plaintiff Boggs and the Classes.

8. "Stacking" arises "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[3] UM/UIM coverage is personal coverage—it covers the person, not the vehicle. When there are multiple vehicles insured under a single policy, multiple UM/UIM coverages exist. *See Franklin*, 532 P.3d at 1146, 1151, ¶¶ 2, 24. Unless the insurer complies with A.R.S. § 20-259.01(H), those coverage limits can be added together to provide "stacked" benefits for a single claim. *Id.* In other words, each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the aggregated (stacked) coverage limit is determined by adding together each vehicle's UM or UIM coverage.

9. The requirement that insurers inform each insured claimant of their right to select one policy or coverage empowers insured claimants to make informed choices about coverage. It ensures that insured claimants are fully aware of their options and rights, particularly in complex situations involving multiple policies and coverages.

10. Arizona law also provides that, when an insured is injured and presents a first-party claim, the duty of good faith and fair dealing requires an insurer to meet several crucial duties: For example, it must (1) reasonably investigate the claim and applicable law; (2) work to find all available coverage for the insured; (3) identify and fully disclose

---

[3] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 787 P.2d 1066, 1068 n.2 (Ariz. 1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer").

all pertinent benefits, coverages, and policy provisions; (4) inform the insured accurately about available coverages and benefits; (5) avoid mispresenting or concealing any pertinent benefits, coverages, or policy provisions; (6) avoid requesting a release that extends beyond the subject matter that gave rise to a claim payment; (7) construe the policy in accordance with known law; (8) treat its insured fairly and reasonably; and (9) give the insured's interests equal consideration.[4]

11. Whether handling UM/UIM claims (1) involving situations where Defendant failed to make the mandatory written offer to the named insured or (2) involving multiple vehicles under the applicable policy, Defendant breached each of these duties as well as the insurance contracts themselves.

12. As a matter of uniform and standard practice and procedure, Defendant failed to provide Jared Miiller as the named insured with the mandatory written offer to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits, but nonetheless Defendant either disclaimed UM/UIM coverage entirely or, in Plaintiff Boggs' case, understated the applicable UM/UIM limits. Also as a matter of uniform and standard practice and procedure, Defendant failed to inform Class members of the right to select which coverage to apply to the accident by including that right in the policy or timely advising Class members of that right in writing, but nonetheless Defendant applied a single UM/UIM coverage limit to Plaintiff Boggs's claim even though the policy covered multiple vehicles.

---

[4] *See, e.g.*, Ariz. Admin. Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 277 P.3d 789, 800 (Ariz. App. 2012); *Sarchett v. Blue Shield of Cal.*, 729 P.2d 267, 275-77 (Cal. 1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 370 N.E.2d 941, 956-57 (Ind. App. 1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

13. Regarding Plaintiffs and Class members, Defendant was responsible for making a written offer to the named insured of the policy in limits equal to the policy's bodily injury liability limits. Because Defendant failed to do so, Plaintiffs and the Class are entitled to UM/UIM limits equal to liability limits. And because Defendant failed to disclose, apply, and pay these benefits to injured insureds like Plaintiff Boggs, Defendant breached its contractual, good faith, and legal duties to its customers.

14. Regarding Plaintiffs and Class members, Defendant was also responsible for fully disclosing, applying, and paying UM/UIM coverage up to the stacked limits required by Arizona law and the properly construed insurance policy but failed to do so. Having failed to qualify for the right to prohibit stacking, having failed to disclose, apply, and pay stacked benefits to its insureds, and having failed to notify the insured of her right to select one policy or coverage, Defendant breached its contractual, good faith, and legal duties to its customers, including underpaying the benefits due.

15. Plaintiffs, at all relevant times, were insureds under a Tesla General Insurance policy, and they bring this action in part under (a) 28 U.S.C. §§ 2201 & 2202 for a declaratory judgment regarding their rights and the rights of the Classes under the applicable auto insurance policy or policies ("the Tesla Policy" or "the Tesla Policies") and (b) state law.

## II. PARTIES

16. Plaintiffs Athena Boggs ("Ms. Boggs" or "Plaintiff Boggs") and Jared Miiller ("Mr. Miiller" or "Plaintiff Miiller") are residents and citizens of Arizona.

17. Defendant Tesla General Insurance is an insurance company incorporated under the laws of California, with its principal place of business in California, but which does business in the state of Arizona.

18. Tesla General Insurance was formerly known as Newport Insurance Company. The name change was effective February 2, 2022. All references herein to Defendant, Tesla, or Tesla General Insurance include Newport Insurance Company.

## III. JURISDICTION AND VENUE

19. Plaintiffs are citizens of Arizona. Defendant is a citizen of California. Therefore, complete diversity exists.

20. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the $175,000 value of the disputed claim for equalized and then stacked UM/UIM coverages, plus bad faith damages and attorneys' fees) exceeds $75,000, exclusive of costs and interest, and Plaintiffs and Defendant are citizens of different states. This Court also has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Classes consist of 100 or more members, the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists.

21. Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims described herein occurred within this district and the Tesla Policies were issued in this district, and Defendant does business in this district.

22. Whenever it is alleged in this Complaint that Tesla did any act or thing, it is meant that Tesla and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Tesla or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Tesla and its officers, agents, servants, employees or representatives. Specifically, Tesla is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

## IV. GENERAL ALLEGATIONS AS TO ARIZONA LAW

### A. Overview

23. This case is about 1) Tesla's failure to offer UM/UIM limits that are equal to liability limits, which are therefore supplied by law and 2) Tesla's failure to stack single coverage limits where multiple vehicles are insured under a single policy. The amount of stacked limits necessarily depends on the amount of each single limit of coverage; stacked limits are calculated as the single coverage limit multiplied by the number of vehicles

insured under the policy. While each violation may affect different pools of Class members differently, in all cases resolution of the offer question must precede resolution of the stacking question. Thus, this Complaint first addresses the offer requirement under subsections (A) and (B) of A.R.S. § 20-259.01, which establish the baseline statutory minimum UM/UIM coverage to which each insured is entitled per vehicle. For insureds who did not receive a compliant written offer, subsections (A) and (B) supply the correct per-vehicle limit of coverage, which is coverage equal to the liability limit.

24. Then, this Complaint addresses the availability of stacking under A.R.S. § 20-259.01(H), which presents an entirely separate question: Whether the per-vehicle coverage limits should have been combined (stacked) for insureds whose policies cover more than one vehicle. *Franklin*, 532 P.3d at 1146, 1151, ¶¶ 2, 24. Subsection (H) is not self-executing; insurers may prohibit stacking only if they satisfy the strict statutory conditions of that provision. *Id.*; *Sharp*, 277 P.3d at 196. If Subsection (H) is not satisfied, the insurer must disclose, apply, and pay stacked benefits under multi-vehicle policies.

25. Some insureds were never properly offered UM/UIM coverage and received either no UM/UIM coverage ***or*** UM/UIM coverage that is less than their liability limit, requiring a correction to their policy, regardless of whether the policy insures a single vehicle or multiple vehicles. Other insureds already have equal limits on multi-vehicle policies, but presented UM/UIM claims and were not given stacked benefits, resulting in underpayments because their claims were improperly capped at the single limit of UM/UIM coverage. Other insureds may have suffered from both of Tesla's violations, requiring their single policy limit to be both equalized with the liability limit and then stacked according to the number of vehicles insured under the policy.

26. To handle these claims properly, our sequential framework addresses each violation independently. Subsections (A) and (B) establish what coverage should exist on each vehicle. Subsection (H) establishes whether the correctly determined coverage limits should be multiplied by the number of vehicles insured by Tesla. The sections below follow

this framework and address the rights and remedies of each Class member affected by either or both violations.

**B. Every insurer is required to offer UM/UIM limits equal to liability limits, and if it does not, equal limits arise as a matter of law.**

27. Arizona's statute governing UM/UIM coverage is A.R.S. § 20-259.01. This statute, known as the UMA, is incorporated into every personal auto policy issued to an Arizona insured. *Ins. Co. of N. Am.*, 800 P.2d at 588. It requires auto insurers to offer UM and UIM coverage on each insured vehicle in limits equal to the policy's bodily injury insurance limits and governs the terms of that coverage.

28. Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g., Cundiff v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 270 (Ariz. 2008); *Sharp*, 277 P.3d at 193, 197. The UMA has "a remedial purpose and must be construed liberally in favor of coverage." *Id.* at 197 ¶ 18 (quoting *Taylor v. Travelers Indem. Co. of Am.*, 9 P.3d 1049 (Ariz. 2000)).

29. The UMA requires "[e]very insurer writing automobile liability . . . policies" to "by written notice offer the named insured" the option to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits. A.R.S. § 20–259.01(A) & (B). "The statutory requirement of a written offer is absolute on its face," *Estate of Ball*, 888 P.2d at 1314, and must be made on a form approved by the Arizona Director of Insurance. A.R.S. § 20–259.01(A) & (B); *see Franklin*, 532 P.3d at 1152 ¶ 27.

30. "[B]y written notice offer" requires "that insurers bring the availability of [equal limits] coverage to the insured's attention." *Ballesteros v. Am. Standard Ins. Co. of Wis.*, 248 P.3d 193, 196, ¶ 11 (Ariz. 2011). The word "offer" is a verb and means "[t]o bring to or before; to present for acceptance or rejection; to hold out or proffer; to make a proposal to; to exhibit something that may be taken or received or not." *Tallent v. Nat'l Gen. Ins. Co.*, 915 P.2d 665, 666–67 (Ariz. 1996) (quoting Black's Law Dictionary 1081 (6th ed. 1990)). Whether a statutorily compliant offer has been made, using a form approved by the Arizona Director of Insurance, depends "on whether a reasonable person

would understand that his or her acceptance would bind the insurer to provide the offered coverage." *Newman v. Cornerstone Nat'l Ins. Co.*, 344 P.3d 377, 339 (Ariz. 2015) (citing *Ballesteros*, 248 P.3d at 196–97 ¶¶ 13–14).

31. When an insurer fails to comply with the UMA's written offer requirement, "the appropriate remedy is to impose UM and UIM coverage in an amount equal to the bodily injury liability limits of the policy." *Estate of Palomera-Ruiz*, 231 P.3d at 387 ¶ 11 (citing *Ins. Co. of N. Am. v. Superior Court*, 800 P.2d at 588).

**C. If an insurer fails to comply with the notice requirements of A.R.S. § 20-259.01(H), it must stack coverages when it insures multiple vehicles.**

32. The second phase of this coverage dispute revolves around Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, which allows insurers to draft their policies to prohibit stacking of UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must "expressly and plainly limit stacking in the policy" with "unambiguous language plainly disavowing the possibility of stacking." *Franklin*, 532 P.3d at 1148 ¶ 11. In addition, they must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." *Id.* at 1148 ¶¶ 10-11 (quoting A.R.S. § 20-259.01(H)).

33. Because Subsection (H) uses the word "may," it is not self-executing; rather, it "permits" or "authorizes" an insurer to take affirmative steps so that only one "policy or coverage" applies. *Sharp*, 277 P.3d at 196; *see also Franklin*, 532 P.3d at 1148 ¶ 10 ("Insurers may limit stacking, but insurers must satisfy the statute's notice requirement.") (internal quotation omitted); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 897 P.2d 631, 633 (Ariz. 1995) ("this provision is not self-executing because its wording is merely permissive"); *Hanfelder v. GEICO Indem. Co.*, 422 P.3d 579, 581 ¶ 8 (Ariz. App. 2018) ("Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations.").

34. The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple UIM coverages for the same accident." *Sharp*, 277 P.3d at 196 ¶ 15.

35. Subsection (H) is not exclusively limited to circumstances where multiple policies exist; it applies to multiple policies or coverages, and therefore to the stacking of UM/UIM coverages under both multiple policies and a multi-vehicle insurance policy. *Franklin*, 532 P.3d at 1153; *see also Heaton v. Metro. Grp. Prop. and Cas. Ins. Co.*, No. 2:21-CV-00442-SRB, at *7 (D. Ariz. Oct. 19, 2021) ("[M]ultiple coverages exist when multiple vehicles are insured under a single policy that contains UM/UIM coverage.").

36. Under Subsection (H), an insurer cannot prevent stacking if it fails to include plain, express, and unambiguous policy language that prohibits and disavows the possibility of stacking. *Franklin*, 532 P.3d at 1148 ¶¶ 10-11.

37. There is a second element to limit stacking under Subsection (H): "insurers must . . . satisfy the notice requirement [by] informing the insured of their 'right to select one policy or coverage' either in the policy itself or in writing to the insured within thirty days after the insurer is notified of the accident. *Id.* (quoting § 20-259.01(H)); *see also Heaton*, 2021 WL 6805629 at *8 ("Having found that [plaintiffs] have multiple UM/UIM coverages under the statute by virtue of insuring multiple vehicles, the Court concludes that both [plaintiffs] may stack their available coverages because [the insurer] did not adhere to the requirements of A.R.S. § 20-259.01(H) to prevent stacking."); *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697, at *2 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM coverages, and stating: "Failure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law.").

**D. Tesla's insurance contracts are governed by the implied covenant of good faith and fair dealing.**

38. Both of the coverage issues raised here are governed by an obligation implied in every insurance contract in Arizona—a covenant of good faith and fair dealing owed to the insured. Under the covenant of good faith and fair dealing, an insurer must deal fairly with an insured, providing fair and honest treatment, and giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 726 P.2d 565, 572-73 (Ariz. 1986).

39. Among other things, "[t]he carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim, and act promptly in paying a legitimate claim. It should do nothing that jeopardizes the insured's security under the policy. It should not force an insured to go through needless adversarial hoops to achieve its rights under the policy." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 ¶ 21 (Ariz. 2000).

40. The duty of good faith and fair dealing, apart from the responsibility to promptly pay covered claims, also "encompasses some obligation to inform the insured about the extent of coverage and his or her rights under the policy and [must] do so in a way that is not misleading." *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 277 P.3d 789, 800 ¶ 54 (Ariz. App. 2012) (citing *Rawlings*, 726 P.2d at 572-73).

## V. TESLA IMPROPERLY REFUSES TO DISCLOSE, STACK, EQUALIZE, AND PAY THE FULL AMOUNT OF MS. BOGGS'S UIM COVERAGES

41. On May 4, 2025, Jordan Lynch was operating a car that collided with Ms. Boggs's vehicle.

42. Mr. Lynch, as shown in video footage and indicated in the police report, ran a red light, causing the accident.

43. Mr. Lynch was negligent in causing the accident and is solely at fault for causing the accident.

44. As a result of the accident, Ms. Boggs suffered severe injuries, including (as documented in the medical records) "[a]cute left sacral alar fracture with extension into the

left hemisacrum. Acute left anterior column fracture with minimal displacement. Acute fracture of the left inferior pubic ramis."

45. As a result of the accident, Ms. Boggs incurred medical specials that exceed $125,000. As of this filing, Ms. Boggs is continuing to be treated for her accident-related injuries. At the time of the accident, Ms. Boggs was employed as an ICU nurse at HonorHealth's Deer Valley Medical Center. As a result of the accident, Ms. Boggs missed at least twenty full weeks of work because of her accident-related injuries, with lost income under Arizona law of at least $38,846. Ms. Boggs has suffered noneconomic damage that is substantial in amount. Collectively, her damage exceeds any coverage limits at issue in this suit—that is, she would be entitled to full policy limits even if she achieved the highest limits sought in this action.

46. Mr. Lynch, on information and belief, had only $100,000 in liability insurance applicable to the accident provided by Progressive Preferred Insurance.

47. Given the severity of Ms. Boggs's injuries from the accident, her damages exceed the amount of liability insurance available to Mr. Lynch, who therefore is underinsured as to Plaintiff Boggs. *See* A.R.S. § 20-259.01(G).

48. To protect themselves and their guests and family members from uninsured or underinsured tortfeasors, Ms. Boggs' cohabitant "significant other" (now husband), Plaintiff Miiller, had purchased UM/UIM insurance. Ms. Boggs was an insured under the policy and noted therein as an insured driver of the insured vehicles.

49. Plaintiff Miiller initially purchased this auto insurance from State National Insurance Company ("State National"), effective November 3, 2023, covering one vehicle. Plaintiff Miiller selected bodily injury liability limits of $100,000 per person, $300,000 per accident, UM limits of the same amounts, and UIM limits of $25,000 per person, $50,000 per accident. The State National policy listed Plaintiff Miiller as the "named insured" and Tesla Insurance Services, Inc. ("Tesla Insurance Services") as the "producer," a term which customarily refers to the sales agent for an insurance product.

50. During the first six-month policy period, Plaintiff Miiller added a second vehicle to their State National policy and changed the UM limits on that policy to $25,000 per person, $50,000 per accident.

51. State National renewed the policy for six-month terms effective May 3, 2024, and November 3, 2024.

52. On March 16, 2025, Tesla Insurance Services notified Plaintiff Miiller that their State National policy was not being renewed but that it was offering coverage from Tesla General Insurance, expressly stating that its communication was a "Notice of Non-Renewal and Offer from Tesla General Insurance." The notice further informed Plaintiff Miiller, and other recipients, that "Tesla has introduced a new insurance program in Arizona to be underwritten by Tesla General Insurance" and "*Tesla is phasing out our State National Insurance Company program in Arizona and we will no longer be offering coverage for your policy* ***with that underwriter*** *at the end of your current term*" (italics in original; bolding added).

53. According to the March 16 notice, Tesla Insurance Services would "switch" State National insureds like Plaintiff Miiller to a new insurance product underwritten by a wholly separate underwriting company: Tesla General Insurance. This new policy would take effect "automatically" if insureds did not cancel their recurring payment authorization three days before May 3, 2025, or April 30, 2025. In other words, the new offer of coverage would be accepted "by paying the updated monthly premium…."

54. The notice stated that the "switch" from State National to Tesla General Insurance would take place if the insured left their payment authorization in place to cover payment of premiums under the new policy. The notice advised that the first monthly payment under the new policy would be "processed" under the recurring payment authorization three days before May 3, 2025, or April 30, 2025, and if that payment could not be processed ***and*** no payment was made by 12:01 a.m., May 3, 2025, the State National policy would automatically expire "and you will not have insurance coverage with us." Putting aside that coverage under the State National policy would expire even if premiums

were paid under the new separate Tesla General Insurance policy—as they were by Plaintiff Miiller on April 30, 2025—continued payments create a new contract of insurance between the insureds and Tesla General Insurance.

55. Because Plaintiff Miiller never stopped recurring premium payments, and the first payment of the Tesla General Insurance premium took place on April 30, he accepted Tesla General Insurance's offer to insure the two vehicles, at the prescribed time of three days before the new policy took effect.

56. On May 3, 2025, Tesla Insurance Services sent Plaintiff Miiller an email and notice entitled "Renewal Confirmation," thanking Plaintiff Miiller for purportedly "renewing your Tesla Insurance policy." Plaintiff Miiller to that date, however, had never had an auto insurance policy with any Tesla General Insurance entity and therefore was not renewing a policy with any such entity.

57. Despite Tesla Insurance Services giving notice that the State National policy was being non-renewed and offering insurance with Tesla General Insurance, neither Tesla General Insurance nor Tesla Insurance Services made Plaintiff Miiller a written offer of UM/UIM limits equal to the bodily injury liability limits on the Tesla General Insurance policy.

58. The only documents provided to Plaintiff Miiller were certain documents posted to the Tesla App with a declarations page showing the policy period starting on May 3, 2025, and listing Defendant as the underwriting company for the new policy. Defendant's practice was to disclose the existence of these documents after payment was made and the contract established, as was the case with Plaintiff Miiller.

59. The documents included various disclosures, standard form policy language, and a pre-filled, unsigned two-page form entitled "ARIZONA UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGE OFFER" and listing Defendant as the "Underwriting Company."

60. Neither Defendant nor Tesla Insurance Services provided that two-page "ARIZONA UNINSURED MOTORIST AND UNDERINSURED MOTORIST

COVERAGE OFFER" form to Plaintiff Miiller with the March 16, 2025 notice described above (or even the May 3, 2025 email that post-dated the contract formation), and neither communication "offered" or even alluded to the availability to purchase UM/UIM coverage equal to liability limits for purchase from Tesla General Insurance.

61. At the time of loss on May 4, 2025, Plaintiffs were insured under a Tesla General Insurance auto insurance policy that insured two vehicles: A 2023 Tesla Model 3, VIN 5YJ3E1EA2PF680341 and a 2008 Lincoln Navigator, VIN 5LMFU28588LJ17290. This policy number was TLA-AZ-A-9999WFYR ("the Boggs Tesla Policy" or "Plaintiffs' Policy").

62. Each vehicle's coverage provided Plaintiffs with bodily injury liability coverage of $100,000 per person and $300,000 per accident, UM benefits of $25,000 per person and $50,000 per accident, and UIM benefits of $25,000 per person and $50,000 per accident.

63. On May 5, 2025, Plaintiff Miiller notified Tesla of the accident via the Tesla App, and spoke with a Tesla representative about the accident soon thereafter. On May 6, 2025, Tesla emailed Plaintiff Miiller that it had opened a claim and assigned a claim number of CL-10-99WFYR-1.

64. On July 24, 2025, and August 26, 2025, Ms. Boggs's counsel, Womble Bond Dickinson, wrote Tesla letters, referencing claim number CL-10-99WFYR-1, and asking Tesla to disclose all UIM coverages and benefits applicable to the accident.

65. On September 2, 2025, Tesla responded to those letters:

> Pursuant to your request and after review of our insured's policy, we found . . . [y]our client's policy does have the following policy limits:
> Collision: $500
> Rental Reimbursement: No Coverage
> Uninsured/Underinsured Motorist Bodily Injury: $25,000/$50,000
> Medpay: $5,000.

66. In the "Underinsured Motorists Coverage" section of Plaintiffs' Policy, Tesla agreed to pay as follows:

> "[W]e" will pay compensatory damages which an "insured" is legally entitled to recover from the "owner" or operator of an "underinsured motor vehicle" because of "bodily injury" as a result of an "accident" arising from the ownership, maintenance or use [of] the "underinsured motor vehicle."

67. On September 11, 2025, Ms. Boggs's counsel wrote a letter to Tesla, demanding "payment of all available UIM coverages on her policy with Tesla Insurance." The letter included the police report, scene photos, video footage of the accident, medical records, medical bills, lost income documentation, and documentation of Mr. Lynch's liability insurance limits.

68. At that time, Tesla knew, at the very least, that (a) Ms. Boggs was admitted into HonorHealth Deer Valley Medical Center for evaluation and treatment of her severe orthopedic injuries from the accident; (b) her accident-related medical bills exceeded $125,000, and (c) she missed over twenty full weeks or work because of those injuries, with lost income of at least $38,846.

69. In other words, Tesla knew that Plaintiff Boggs's damages attributable to the tortfeasor's fault in the accident exceeded the combined limits of the tortfeasor's $100,000 liability coverage and the understated $25,000 UIM coverage limit Tesla deceptively disclosed to Plaintiffs.

70. Plaintiff Boggs's damages attributable to the tortfeasor's fault in the accident exceeded the combined amounts of the tortfeasor's bodily injury liability coverage and the properly calculated UIM coverages on the two vehicles insured under Plaintiffs' Tesla Policy.

71. Upon information and belief, Tesla knew that Plaintiff Boggs's damages attributable to the tortfeasor's fault in the accident exceeded the combined amounts of the tortfeasor's bodily injury liability coverage and the properly calculated UIM coverages on the two vehicles insured under Plaintiffs' Tesla Policy.

72. On September 24, 2025, Tesla responded to Ms. Boggs's demand for "payment of all available UIM coverages on her policy with Tesla Insurance" by "tendering the single person UIMBI limit of $25,000 to settle your client's claim." Tesla's tender was accompanied by a "UMBI Release" to be signed by Ms. Boggs.

73. The Tesla Policy under which Plaintiffs were insured is Tesla's standard form Policy for personal (i.e., non-commercial) auto policies.

74. The Tesla Policy fails to include a statement informing the insureds of their "right to select one policy or coverage," as the case may be, to any one accident. (As used herein, the "Tesla Policy" or the "Tesla Policies" means any personal auto policy issued to an Arizona insured by Tesla.)

75. The Tesla Policy does not comply with A.R.S. § 20-259.01(H) because it does not limit the UM/UIM coverage on each covered vehicle so only one "policy <u>or coverage</u>" shall apply to any one accident, and as a standard practice Tesla does not inform the insured, either in the Policy itself or by letter within 30 days of notice of the insured accident, of their right to select one UM/UIM coverage, as between multiple vehicles insured under the policy, in the event of a covered accident.

76. The UM and UIM coverage sections in the Tesla Policy contain separate provisions applicable to "stacking of policies" and "stacking of coverages."

77. As to "stacking of <u>policies</u>," the UM and UIM coverage sections in the Tesla Policy, state: "**NO STACKING OF POLICIES.** If this policy and any other 'private passenger automobile' insurance policy that is issued to 'you' by 'us' apply to the same 'accident', only one of the polices will apply to the 'accident', and 'you' must select the one policy that will apply."

78. As to "stacking of <u>coverages</u>," however, the UM and UIM coverage sections in the Tesla Policy, merely state:

> **NO STACKING OF COVERAGES.** There shall be no adding, stacking or combining of coverages under this policy. The limit of liability shown in the "Policy Declarations" for each person for **Uninsured [Underinsured] Motorists**

> **Coverage** is "our" maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one (1) person in any one (1) "accident". Subject to this limit for each person, the limit of liability shown in the "Policy Declarations" for each "accident" for **Uninsured [Underinsured] Motorists Coverage** is our ["our"] maximum limit of liability for all damages for "bodily injury" resulting from any one (1) accident. This is the most "we" will pay regardless of the number of:
> 1. "Insureds";
> 2. Claims made;
> 3. Vehicles or premiums shown in the Declarations; or
> 4. Vehicles involved in the "accident".

79. Nowhere in reference to "stacking of <u>coverages</u>" does the Tesla Policy statement inform the insureds of their "right to select one policy or coverage," as the case may be, to any one accident.

80. Limit of Liability language, standing alone, does not satisfy the requirements of Subsection (H) or preclude stacked UM or UIM coverage. *See Franklin*, 532 P.3d at 1146 ¶ 2; *Lindsey*, 897 P.2d at 633; *Heaton*, 2021 WL 6805629.

81. No other provision of the Tesla Policy or declarations informs insureds of their right to select one coverage.

82. Tesla also did not, within 30 days of being notified of the May 4, 2025, accident at issue here, send Plaintiff Boggs or any other insured under the Policy any written notice of Plaintiff Boggs's "right to select one policy or coverage."

83. Before receiving the September 11, 2025, demand, Tesla General Insurance knew, or should have known, that Tesla did not make the mandatory written offer to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits, that the Tesla Policy did not preclude stacking of UM/UIM coverages, and that and therefore that the "available UIM coverages" on Plaintiffs' Policy were $200,000.

84. Before receiving the September 11, 2025, demand, Tesla knew it was required to make the mandatory written offer to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits and was aware of its practices and

procedures regarding how the UM/UIM form was used and disclosed. Tesla also knew it was required to send a "right to select letter" within 30 days of receiving notice of an accident for the "right to select letter" to have any chance of being effective to preclude stacking as to multiple coverages in a Tesla Policy. *See* A.R.S. § 20-259.01(H).

85. Tesla's September 2, 2025 letter affirmatively misrepresented and concealed the available benefits on the Policy, violating Arizona law. *See* Ariz. Admin. Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first-party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); § 20-6-801(D)(2) ("No agent shall conceal from first party claimants' benefits, coverages or other provisions of any insurance policy or insurance contract when the benefits, coverages or other provisions are pertinent to a claim.").

86. Accordingly, Plaintiff Boggs is entitled to UIM limits equal to bodily injury limits, namely, of $100,000 per UIM coverage. *Estate of Palomera-Ruiz*, 231 P.3d at 387 ¶ 11, citing *Ins. Co. of N. Am. v. Superior Court*, 800 P.2d at 588. Further, based on the aforementioned facts, the stacking of Plaintiffs' Underinsured Motorist coverage is permitted. *See* A.R.S. § 20-259.01(H); *Franklin*, 532 P.3d at 1146, 1148 ¶¶ 2, 11; *Heaton*, 2021 WL 6805629; *Schwallie*, 2013 WL 4478697. When properly determined and then stacked, the available UIM coverages for Plaintiff Boggs as to her accident total $200,000.

87. On September 24, 2025, Tesla tendered a single UIM limit of $25,000 on one of Plaintiffs' insured vehicles, along with a "RELEASE OF UNDERINSURED MOTORISTS COVERAGE" ("the Release"). The Release conditioned payment of the single UIM limit of $25,000 on Ms. Boggs agreeing to "release and forever discharge Releasee [Tesla General Insurance, Inc.] for the Claim [defined as Ms. Boggs's "claims for underinsured motorists (UIM) coverage under a policy of automobile insurance issued by Releasee for the damages allegedly suffered by Releasor as a result of the Accident"]."

88. The Release conditioned payment of the single UIM limit of $25,000 on Ms. Boggs agreeing to "defend, hold harmless and indemnify Releasee for and from any and all expenses, liabilities, liens, judgments, further claims, obligations, debts, actions, causes

and/or rights of action, damages that may be made or asserted against Releasee relating to, based on, or arising out of the bodily injury damages allegedly suffered by Releasor."

89. Ms. Boggs declined to sign the Release. Ms. Boggs's counsel wrote Tesla that "[a]ssuming a release is not a condition of payment, please make the check payable to the Womble Bond Trust Account." Tesla then issued payment for the single UIM limit of $25,000 to Ms. Boggs's counsel, and in doing so, acknowledged the Release was not a condition of payment if the claimant was savvy and bold enough to refuse to sign it.

90. When it tendered the release, Tesla still knew or should have known that the applicable UIM coverages under Plaintiffs' Policy totaled $200,000 based on equalized coverage for the two vehicles, which may then be stacked. Nonetheless, it misrepresented and concealed the available UIM coverage as being limited to $25,000.

91. Tesla misrepresented and concealed the applicable UIM coverage limits with the intent to deceive Plaintiff Boggs into accepting a single-vehicle reduced limit and to induce execution of the improper Release, thereby avoiding payment of the fully equalized and/or stacked benefits owed and attempting to deter Plaintiff Boggs from pursuing available remedies, including bad faith remedies, for its concealment and underpayment of known insurance benefits.

92. Tesla knew it did not make the mandatory written offer to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits, and that the remedy for this failure would be to equalize UM/UIM limits with bodily injury limits.

93. Tesla also knew Plaintiffs' Policy did not contain language informing insureds of their right to select which UM/UIM coverage to apply to an accident.

94. Tesla also knew that, absent such language in the Policy, A.R.S. § 20-259.01(H) required it to provide written notice of the insured's right to select one coverage within 30 days of being notified of the accident—which, in Plaintiff Boggs's case, was May 5, 2025. Despite this requirement, Tesla did not provide any such written notice within that 30-day period.

95. At the time the Release was sent, Tesla was contractually obligated to pay Plaintiff Boggs the $200,000 in UIM benefits.

96. Plaintiffs' Policy does not require a release to be signed as a condition of receiving benefits due. Thus, Tesla's request for the Release lacked consideration or any legitimate basis in the parties' contractual relationship.

97. Tesla sought to condition payment of the undisputed $25,000 on a release of all claims related to the accident, including stacked benefits that had been misrepresented and concealed, and that had not been disclosed or paid.

98. Tesla's request for a release violates Arizona law, specifically Ariz. Admin. Code § 20-6-801(D)(5), which prohibits insurers from requesting that a claimant sign a release that extends beyond the subject matter giving rise to the claim payment.

99. Tesla never disclosed, discussed, or paid any benefits beyond the $25,000 single-vehicle reduced limit before sending the Release. Any attempt to secure a release of undisclosed stacked or equalized benefits is therefore unlawful, void, and against public policy.

100. Tesla's conduct in failing to disclose coverage, misrepresenting and concealing applicable limits, and seeking an impermissible release of all claims, all while knowing equalized and/or stacked benefits were owed, constitutes bad faith under Arizona law.

101. Had Tesla timely disclosed and acknowledged its obligation to provide equalized and/or stacked benefits, Plaintiff Boggs would have received additional compensation.

102. Tesla also failed to adequately investigate, reasonably evaluate, and promptly pay equalized and/or stacked UIM coverages to Plaintiff Boggs.

103. Tesla also failed to inform Plaintiffs of the availability of or potential for equalized and/or stacked UIM coverages, violating Arizona law. *See* Ariz. Admin. Code § 20-6-801(D)(1)&(2).

104. Tesla did not notify Plaintiffs or any other Class member that if the mandatory offer was not made, UM/UIM coverages equal to bodily injury limits were imposed by law. Nor did Tesla disclose to Plaintiffs or any other Class member that if the required notice of their "right to select coverages" was not sent within thirty days after the accident, Tesla would, under Arizona law, be required to stack multiple UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case for Plaintiffs or any other Class member.

105. Tesla's silence in that regard, its written statement to Plaintiffs and other Class members in the Policy that "STACKING OF COVERAGES [IS] PROHIBITED" and [t]here shall be no adding, stacking or combining of [UM or UIM] coverages under this policy," and its non-existent notice practice under A.R.S. § 20-259.01(H), collectively and individually, amount to a misrepresentation, failure to disclose, and/or concealment of the availability of or potential for stacked UM/UIM coverage, violating Arizona law.

106. With respect to the foregoing allegations, Tesla failed to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and mispresented and concealed pertinent benefits, coverages, or policy provisions.

107. With respect to the foregoing allegations, Tesla failed to work to find all available coverage for the insured; failed to reasonably investigate the claim and applicable law; failed to construe the policy in accordance with known law; failed to treat its insured fairly and reasonably; failed to give the insured's interests equal consideration to its own; and on information and belief, failed to conduct any investigation let alone undertake a reasonable coverage investigation.

108. Tesla General Insurance was required to, and easily could have, presented the mandatory written offer to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits to Plaintiff Miiller and others when it offered auto insurance, or at some other time before entering into a binding insurance contract with the purchaser.

Having failed to do so, Tesla must provide UM/UIM limits equal to the policy's bodily injury liability insurance limits.

109. To comply with Subsection (H), all Tesla had to do was advise its insureds in the Policy or in writing within 30 days after receiving notice of an accident that they have a right to select one UM or UIM coverage. These, too, were simple options, and either action would have precluded stacking the UM/UIM coverages on Class members' vehicles covered under the Tesla Policy. Having failed to avail itself of either option, Tesla must disclose, apply, and pay stacked UM/UIM benefits.

110. Tesla, having failed to make a statutorily compliant offer of UM/UIM coverage and having failed to avail itself of either option under Arizona law to prohibit stacking, is required to equalize UM/UIM limits to bodily injury limits on all its Tesla Policies and also to stack the UM/UIM coverages for multiple vehicles insured under any one Tesla Policy.

111. Tesla never disclosed or provided equalized and/or stacked UIM coverages to Plaintiffs and other Class members. Tesla, therefore, has denied Plaintiff Boggs benefits to which she is entitled under the Tesla Policy and Arizona law.

112. As a general practice, Tesla does not disclose or provide equalized and/or stacked UM/UIM coverages to Plaintiffs or Class members under the Tesla Policy after a covered accident. Tesla failed to pay Plaintiff Boggs and Class members equalized and/or stacked UM/UIM coverages to which they were entitled.

113. Tesla knew or should have known that its policy interpretation and failures to disclose and pay equalized and/or stacked UM/UIM coverages violated Arizona law.

114. Tesla knew or should have known of the relevant requirements of A.R.S. § 20-259.01(A) & (B), which were in place long before Tesla began selling auto insurance in Arizona.

115. Tesla knew or should have known of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

116. Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right to select which policy or coverage will apply. For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

117. Tesla knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

118. Tesla chose not to follow those practices.

119. Tesla failed, as to Plaintiffs and the Classes, to investigate, identify, acknowledge, and disclose the existence of equalized and/or stacked UM/UIM coverages under the Tesla Policies, including to those injured insureds whose Tesla Policy showed no UM and/or UIM coverage despite those insureds being entitled as a matter of law to equalized coverage limits because of Tesla's failure to provide the mandatory written offer.

120. Tesla and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose equalized and/or stacked UM/UIM coverages under the Tesla Policies, and by misrepresenting and concealing equalized and/or stacked UM/UIM coverages.

121. Tesla has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay equalized and/or stacked UM/UIM benefits it owes under Arizona law. Any insured claimant who (1) received the maximum amount of a single UM/UIM

policy limit shown on the declarations page and (2) who had either (a) one or more vehicles with UM/UIM coverage limits less than bodily injury liability limits, and/or (b) other vehicles insured under the same Tesla Policy providing UM/UIM coverage, was entitled to notice of the additional coverage available and doubtless entitled to additional benefits. Similarly, anyone insured under a policy whose declarations page at the time of an accident showed (a) no UIM coverage and who received liability policy limits from the tortfeasor, and/or (b) no UM coverage and who was injured by an uninsured tortfeasor, was entitled to notice of the additional coverage available and doubtless entitled to UM and/or UIM benefits.

122. Tesla's failures are subjectively unreasonable, intentional, and in conflict with well-established Arizona law.

123. Tesla's failures are objectively unreasonable, intentional, and in conflict with well-established Arizona law.

124. Tesla's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

125. Tesla's concealment of its statutory obligation and its actual coverage limits, as well as its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay equalized and/or stacked UM/UIM coverages have led to underpayments of Plaintiff Boggs's UIM claim as well as the UM/UIM claims of hundreds or thousands of other insureds. As a result, Tesla has paid millions of dollars less for UM and UIM claims than its insureds are entitled to receive under the terms of their standardized policies and Arizona law.

## VI. DEFENDANT'S MISCONDUCT REGARDING UM/UIM LIMITS IS SYSTEMIC

126. Plaintiffs' Tesla Policy is a standardized auto policy with the same or substantially similar provisions in relevant part as the auto policies used by Tesla General Insurance during the relevant time period ("the Tesla Policies").

127. Before issuing any policy under which Plaintiffs or Class members were insured, Tesla General Insurance submitted for approval to the Arizona Director of Insurance "a new program for Private Passenger Auto, with a proposed effective date of February 1st, 2025." This submittal described differences between the new program and the old program (which it called "State National's 'Tesla Private Passenger Auto program'") including, for example, new policy forms and changes to available liability and UM/UIM limits. The submittal informed the Director that Tesla General Insurance intended to begin writing new auto insurance business effective February 1, 2025, and thereafter to "offer new policies to policies being non-renewed by [State National]."

128. As part of this "new program," Tesla Insurance Services, as a standard practice, sent Class members a notice entitled "Notice of Non-Renewal and Offer from Tesla General Insurance." The notice informed Class members that "Tesla has introduced a new insurance program in Arizona to be underwritten by Tesla General Insurance" and "Tesla is phasing out our State National Insurance Company program in Arizona and we will no longer be offering coverage for your policy with that underwriter at the end of your current term" (emphasis in original).

129. Following this notice, Class members did not stop their recurring premium payments. They, therefore, accepted Tesla General's offer to insure their vehicles under new policies with Tesla General after the termination of their old policies issued by State National.

130. Plaintiff Miiller's State National policy, under which Plaintiffs had been insured before her accident, was one of the policies that State National "non-renewed," as described in Defendant's submittal to the Arizona Director of Insurance.

131. Plaintiff Miiller's Tesla Policy, under which Plaintiffs were insured at the time of her accident, was one of the "new policies" Tesla General Insurance "offer[ed]" to State National policyholders, as described in Defendant's submittal to the Arizona Director of Insurance.

132. Tesla General Insurance, as an Arizona auto insurer, was required to "by written notice offer the named insured" the option to purchase UM/UIM limits equal to the policy's bodily injury liability insurance limits. A.R.S. § 20–259.01(A) & (B); *see Estate of Ball*, 888 P.2d at 1314. Tesla was required to make the mandatory written offer on a form approved by the Arizona Director of Insurance. A.R.S. § 20–259.01(A) & (B) *see Franklin*, 532 P.3d at 1152 ¶ 27.

133. Tesla General Insurance's "offer" of "new policies" written on different policy forms to State National policyholders, as described in Defendant's submittal to the Arizona Director of Insurance, was not a "reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy" under A.R.S. § 20–259.01(A) or (B).

134. Despite Tesla Insurance Services giving notice that the State National policy was being non-renewed and offering insurance with Tesla General Insurance, Tesla General Insurance and Tesla Insurance Services had a standard practice of not making Class members a written offer of UM/UIM limits equal to the bodily injury liability limits on the Tesla General Insurance policy.

135. After the Tesla General Insurance policies were offered and became effective, Tesla Insurance Services posted to the Tesla App a new policy document for each named insured with a declarations page showing the new policy period and listing Defendant as the underwriting company for the new policy. The document also included various disclosures, standard form policy language, and a pre-filled, unsigned two-page form entitled "ARIZONA UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGE OFFER" and listing Defendant as the "Underwriting Company."

136. Neither Defendant nor Tesla Insurance Services provided that two-page "ARIZONA UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGE OFFER" form to Class members as part of any offer of coverage or at any time before the Tesla General Insurance policy becoming effective. Nor did either entity

ever "offer" or even allude to the availability to purchase UM/UIM coverage equal to liability limits for purchase from Tesla General Insurance.

137. Tesla General Insurance, using the same policy numbers as used by State National, did not excuse its failure to provide the mandatory written offer. *See Lawrence v. State Farm Mut. Auto. Ins. Co*., 907 P.2d 531 (Ariz. App. 1995) ("Were we to allow the retention of the policy number to be the indicator of whether a 'transfer, substitution, modification or renewal' has been effected, we would be allowing the insurance company, rather than the legislature, to determine when notice is required.").

138. Tesla, having failed to make the UMA's mandatory written offer, must provide equalized UM/UIM coverage for every vehicle insured under the Tesla Policies. *See id*.; *Estate of Palomera-Ruiz*, 231 P.3d at 387 ¶ 11; *Estate of Ball*, 888 P.2d at 1314; *Ins. Co. of N. Am*., 800 P.2d at 588.

139. Tesla knew or should have known of the requirements of A.R.S. § 20-259.01 (A) and (B).

140. As a standard practice, Tesla chose not to comply with those requirements.

141. Likewise, the Tesla Policies do not comply with A.R.S. § 20-259.01(H) because they do not inform the insured claimants of their right to select one UM/UIM coverage as between multiple vehicles insured under the same policy in the event of a covered accident.

142. Tesla, as a standard practice, also did not advise insured claimants, in writing within 30 days of receiving notice of the covered accident, of their "right to select one policy or coverage" as required by A.R.S. § 20-259.01(H).

143. Tesla, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Tesla Policies. See A.R.S. § 20-259.01(H); *Franklin*, 532 P.3d at 1146, 1148 ¶¶ 2, 11; *see also Heaton*, 2021 WL 6805629; *Schwallie*, 2013 WL 4478697.

144. Tesla knew or should have known of the requirements of A.R.S. § 20-259.01 (H).

145. As a standard practice, Tesla chose not to comply with those requirements.

146. As a standard practice, Tesla failed to adequately investigate and reasonably evaluate equalized and/or stacked UM/UIM coverage to which Plaintiffs and Class members were entitled.

147. As a standard practice, Tesla failed to pay, promptly or otherwise, Plaintiff Boggs and Class members equalized and/or stacked UM/UIM coverage to which they were entitled.

148. As a standard practice, Tesla did not notify Plaintiffs or any other Class member that its failure to make the mandatory written offer under A.R.S. § 20-259.01(A)&(B) meant that, under Arizona law, Tesla owed its insured claimants UM/UIM coverage limits equal to liability limits.

149. As a standard practice, Tesla did not notify Plaintiffs or any other Class member that its Policies did not comply with A.R.S. § 20-259.01(H) and that if the required notice was not sent within 30 days of the accident, Tesla would, under Arizona law, owe to its insured claimants stacked UM/UIM coverage.

150. Tesla knew or should have known that its failures to adequately investigate, reasonably evaluate, fully disclose, and promptly pay equalized and/or stacked UM/UIM coverage violated Arizona law.

151. As a standard practice, Tesla did not inform its insureds of the availability of or potential for equalized and/or stacked UM/UIM coverage.

152. Tesla engaged in these standard practices despite (a) knowing, based on legal advice, that equalized and/or stacked UM/UIM coverage was available to its insureds under Arizona law, and (b) acknowledging, on information and belief, the existence of equalized and/or stacked UM/UIM coverage for the rare insured who demanded it.

153. Tesla affirmatively misrepresented, failed to disclose, and/or concealed the availability of or potential for equalized and/or stacked UM/UIM coverage in communications with UM/UIM claimants.

154. In so doing, Tesla failed, as to equalized and/or stacked UM/UIM coverage, to identify and fully disclose all pertinent benefits, coverages, and policy provisions; failed to inform the insured accurately about available coverages and benefits; misled its insureds; and mispresented and concealed pertinent benefits, coverages, or policy provisions.

155. Tesla also failed, as to equalized and/or stacked UM/UIM coverages, to work to find all available coverage for the insured; failed to adequately investigate and reasonably evaluate the claim and applicable law; failed to construe the Tesla Policies in accordance with known law; failed to treat its insureds honestly, fairly and reasonably; forced insureds to go through needless adversarial hoops to achieve their rights under the policy; and failed to give the insureds' interests equal consideration to its own.

156. Any insured claimant who (1) received the maximum amount of a single UM/UIM policy limit and (2) who had either (a) one or more vehicles with UM/UIM coverage limits less than bodily injury liability limits, and/or (b) other vehicles insured under the same Tesla Policy providing UM/UIM coverage, has been underpaid and is entitled to damages.

157. Similarly, Tesla and its agents violated Arizona Administrative Code ("AAC") § 20-6-801(D)(1) by failing to fully disclose to Plaintiffs and the Classes the availability of or potential for equalized and/or stacked UM/UIM coverage under the Tesla Policies. Tesla and its agents violated AAC § 20-6-801(D)(2) by concealing from Plaintiffs and the Classes the availability of or potential for equalized and/or stacked UM/UIM coverage under the Tesla Policies. Injured insureds whose Tesla Policy showed no UM and/or UIM coverage would be entitled, because of the failure to provide the mandatory written offer, to notice of the equalized UM/UIM coverages available.

158. Good-faith claims handling required Tesla to implement a standard practice of always informing insured claimants with one or more vehicles with UM/UIM coverage limits less than bodily injury liability limits and to whom a single limit of UM or UIM coverage is tendered (a) the availability of or potential for equalized UM/UIM coverage under the Tesla Policies, (b) the insurer's practice of paying these claims when asked and

supported by evidence, (c) additional monies may be owed to this claimant depending on the facts of their case, and (d) the claimant may submit additional documentation for that purpose, including medical bills and lost income.

159. Good-faith claims handling required Tesla to implement a standard practice of always informing insured claimants with multiple vehicles insured under a single policy and to whom a single limit of UM or UIM coverage is tendered (a) the availability of or potential for stacked UM/UIM coverage under the Tesla Policies, (b) the insurer's practice of paying these claims when asked and supported by evidence, (c) additional monies may be owed to this claimant depending on the facts of their case, and (d) that the claimant may submit additional documentation for that purpose, including medical bills and lost income.

160. Tesla does not have any such good faith standard practices.

161. To the contrary, Tesla had a standard practice of misrepresenting to and concealing from Class members the potential for equalized and/or stacked UM/UIM coverages under the Tesla Policies.

162. When paying a single limit of UM or UIM coverage to an insured, Tesla and its adjusters had a standard practice of requesting the insured claimant sign a release of all claims in exchange for the single limit payment.

163. Tesla did so despite knowing the insured is entitled to the single limit payment without signing a release, and that it would issue payment of that benefit even if the insured declined to execute the release.

164. Tesla and its agents violated AAC Code § 20-6-801(D)(5) by requesting its first-party UM or UIM claimants to sign a release that extended beyond the subject matter that gave rise to the claim payment, that is, payment of the single UM or UIM limit.

165. Despite claim payments arising out of just one vehicle's UM/UIM coverage, Tesla presented and requested insureds execute its form release to receive benefits—which purported to release all claims arising out of the accident—including claims related to equalized and/or stacked benefits (that were not connected in any way to the claim payment for the single-vehicle limits), but also to other claims insureds may have for bad faith and

punitive damages. This conduct is itself an actionable act of bad faith, permitting recovery of compensatory and punitive damages. *See* Ariz. Admin. Code § 20-6-801(D)(5).

166. Tesla, in requesting the signed release, was attempting to evade and discourage any subsequent requests for equalized and/or stacked limits.

167. Any such releases are void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law.

168. Alternatively, Tesla was obligated to and failed to fully disclose the nature of the claims the claimant was being asked to release.

169. On information and belief, Tesla also on occasion conditioned payment of equalized and/or stacked benefits on the claimant agreeing in the signed release that the payment of equalized and/or stacked benefits remain confidential.

170. Despite (on information and belief) having paid equalized limits and/or stacking claims in Arizona and received legal advice on its stacking and equalized coverage obligations in this State, Tesla has failed to search and reopen its closed claim files to investigate, evaluate, and pay equalized and/or stacked UM/UIM coverage benefits it owes under Arizona law.

171. Tesla knew or should have known that its standard claims handling practices as to equalized and/or stacked UM/UIM coverages benefits did not comply with Subsections (A), (B), and (H).

172. Tesla's actions were unreasonable, intentional, knowing, in reckless disregard of its insureds' rights, and in conflict with well-established Arizona law.

173. Tesla's systemic misconduct described above has led to underpaying Plaintiff Boggs's UIM claim and underpaying or not paying thousands of other UM/UIM claims, and thus resulted in Tesla paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VII. CLASS ACTION ALLEGATIONS

174. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action (for the Classes defined below), pursuant to Rule 23.

175. The "UM and/or UIM Coverage Declaratory Relief and Remedial Notice Class" consists of the following:

> From the earliest possible date provided by law to the date of judgment, all persons who were insured under a Tesla General Insurance, Inc. personal automobile insurance policy issued in Arizona that declared UM and/or UIM coverage with limits that were less than bodily injury liability limits, including those with zero or no UM/UIM limits.

176. The "Unequal Limits Damages Class" consists of the following:

> From the earliest possible date provided by law to the date of judgment, all persons who were insured under a Tesla General Insurance, Inc. personal automobile insurance policy issued in Arizona that declared UM and/or UIM coverage with limits that were less than bodily injured liability limits and who experienced a covered loss where the insured person received UM or UIM benefits and either:
>
> (a) the UM or UIM benefits were limited to limits of coverage, or.
>
> (b) the UM or UIM benefits were reduced due to apportionment among multiple claimants, with the collective claim limited to the limits of coverage.

177. The "Stacking Class" consists of the following:

> From the earliest possible date provided by law to the date of judgment, all persons who were insured under at least one personal automobile insurance policy insuring multiple vehicles issued in Arizona by Tesla General Insurance, Inc., and who experienced a covered loss where the insured person received UM or UIM benefits and either:
>
> (a) the UM or UIM benefits were limited to the limits of

coverage of a single vehicle, or

(b) the UM or UIM benefits were reduced due to apportionment among multiple claimants, with the collective claim limited to the limits of coverage of a single vehicle.

178. Excluded from the Classes are Defendant, its officers, directors, and employees, the Court, the Court's immediate family, Court staff, and persons who validly and timely exclude themselves from the Class.

179. Plaintiff Boggs is a member of both the Unequal Limits Damages Class and the Stacking Class.

180. Plaintiff Miiller is a member of the UM and/or UIM Coverage Declaratory Relief and Remedial Notice Class.

181. While the exact number of members cannot be determined, on information and belief, both Classes consist of at least hundreds of Arizona residents. The members of the Classes are therefore so numerous that joinder of all members is impracticable. The exact number of Class members can readily be determined by documents produced by Tesla.

182. There are questions of fact and law common to the Classes, including the following:

i. Whether Tesla failed to provide mandatory written offers under A.R.S. § 20-259.01(A) & (B);

ii. Whether Tesla failed to provide UM/UIM limits equal to bodily injury liability limits;

iii. Whether the Tesla Policy complies with A.R.S. § 20-259.01 (H), such that Tesla may preclude stacking;

iv. Whether Tesla failed to send timely notice to insureds after an accident of their right to select one UM/UIM coverage;

v. Whether Tesla failed to stack UM/UIM coverages;

vi. Whether Tesla knew or should have known its failure to pay equalized and/or stacked UM/UIM coverages violated Arizona law;

vii. Whether Tesla recklessly or willfully failed to investigate, evaluate, and inform itself on Arizona law on mandatory written offers and equalized and/or stacked UM/UIM coverages;

viii. Whether Tesla or its agents systematically failed to fully disclose the availability of or potential for equalized and/or stacked UM/UIM coverages under the Tesla Policies;

ix. Whether Tesla or its agents systematically misrepresented, failed to disclose, and/or concealed the availability of or potential for equalized and/or stacked UM/UIM coverages under the Tesla Policies in communications with insureds;

x. Whether, through the foregoing practices, Tesla breached its contracts with its insureds;

xi. Whether, through the foregoing practices, Tesla breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

xii. Whether, through the foregoing practice, Tesla caused and will continue to cause harm to its insureds;

xiii. Whether Plaintiffs and the Classes are entitled to declaratory relief;

xiv. Whether Tesla's above-referenced conduct as to the Classes warrants an award of compensatory damages;

xv. Whether Tesla's above-referenced conduct as to the Classes warrants an award of punitive damages; and

xvi. Whether Plaintiffs and the Classes are entitled to an award of attorney's fees.

183. Plaintiffs have the same interests in this matter as all other members of the Classes, and her claims are typical of those of all members of the Classes. Plaintiffs' claims are coincident with and not antagonistic to those of other Class members she seeks to represent. Plaintiffs and all Class members have been harmed by Tesla's common course

of conduct as outlined herein. The harm to each Class member was caused by Tesla's wrongful conduct.

184. Plaintiffs are committed to pursuing this action and have retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the Class members.

185. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Tesla's actions are generally applicable to the Classes as a whole, and Plaintiffs seek, among other things, equitable remedies with respect to the Classes as a whole including declaratory relief regarding the terms of the Tesla Policy and its breach, as well as an injunction requiring Tesla to notify Class Members of the correctly equalized and/or stacked policy limits.

186. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

187. Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of key fact issues common to the Classes—did Tesla comply with Subsections (A), (B), and (H) and did Tesla's conduct constitute bad faith under Arizona law—will materially advance the litigation.

188. Absent a class action, most of the members of the Classes will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The classwide treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Tesla has misrepresented, failed to disclose, and/or concealed the rights of Class members and those Class members will remain ignorant of their potential claims against Tesla unless court-supervised notice is ordered.

189. Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting

complex litigation and class actions involving the insurance industry. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of other members of the Class.

**FIRST CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

190. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

191. Plaintiffs and the Classes have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Tesla Policies under Arizona law, namely, A.R.S. § 20-259.01(A), (B), and (H) to this case, Tesla's obligation to disclose and not misrepresent or conceal the existence of equalized and/or stacked UM/UIM coverages, and whether Plaintiffs and the Classes are entitled to equalized and/or stacked UM/UIM coverages.

192. Under the circumstances, Plaintiffs and the Classes are entitled to a judicial declaration of their rights under the Tesla Policies, specifically that they are entitled to coverage based on and/or payment of equalized and/or stacked UM/UIM coverages under the Tesla Policies; that Tesla is required to fully disclose and not mispresent or conceal the availability of or potential for equalized and/or stacked coverages to them; that any signed releases in exchange for payment of UM or UIM limits are void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law; and that Tesla is required to search and reopen its closed claim files to adequately investigate, reasonably evaluate, and promptly pay equalized and/or stacked UM/UIM coverage benefits.

193. This claim arises out of contract and Plaintiffs and the Classes therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

194. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

195. Each Class member (including Plaintiffs) is a party to one or more of the standardized Tesla Policies.

196. Tesla breached those contracts by failing to identify, disclose, adjust based on, and/or pay equalized and/or stacked UM/UIM coverage to Plaintiffs and the Classes where owed.

197. The Classes (including Plaintiffs) have been and continue to be damaged by Tesla's breaches of contract.

198. This claim arises out of contract and Plaintiffs and the Classes therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**THIRD CLAIM FOR RELIEF**
**(BAD FAITH AS TO THE CLASSES)**

199. Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

200. Inherent and implied in the Tesla Policies is a covenant of good faith and fair dealing owed to Plaintiffs and the Classes. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests as it gives to its own. *See, e.g., Rawlings*, 726 P.2d at 572-73.

201. The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981); *see also Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz. July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch*, 995 P.2d at 280 ¶ 22. Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing

that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 726 P.2d at 576.

202. Tesla further breached its duty of good faith and fair dealing by failing to investigate, evaluate, and inform itself about Arizona law on equalized and/or stacked UM/UIM coverage; failing to fully disclose the availability of or potential for equalized and/or stacked UM/UIM coverage under the Tesla Policies; misrepresenting, failing to disclose, and/or concealing the availability of equalized and/or stacked UM/UIM coverage in its communications with the Plaintiffs and Class members; requesting releases in exchange for payments of UM or UIM limits; and denying the existence of any such equalized and/or stacked limits.

203. Tesla further breached the duty of good faith and fair dealing by failing to reasonably evaluate its contract obligations and promptly adjust based on and/or pay equalized and/or stacked UM/UIM coverage to Plaintiffs and Class members.

204. Tesla did so despite knowing of, recklessly disregarding, or failing to investigate, evaluate, and inform itself of its obligation to do so under Arizona law and considering its failure to comply with Subsections (A), (B), and (H).

205. Tesla knew or should have known of Subsections (A), (B), and (H)'s requirements and its policies' failure to comply with that statute.

206. The tort of bad faith also arises, independent of a claim denial or failure to pay, when the insurer fails to properly "inform the insured about the extent of coverage and his or her rights under the policy and do so in a way that is not misleading." *Nardelli*, 277 P.3d at 800 ¶ 54, citing *Rawlings*, 726 P.2d at 572-573. *See also Deese v. State Farm. Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1271 (Ariz. 1992) (Martone, J., concurring in the judgment) (describing Rawlings as follows: "In *Rawlings*, the contract claim was for fire insurance under the policy. The bad faith tort claim was for failing to disclose to the insured favorable information which would have helped the insured in a separate dispute with its neighbor. These were wholly different claims and thus Farmers' payment of the contract claim was irrelevant to the assertion of the bad faith tort claim. In that context, the contract

claim was not an essential ingredient of the tort claim.") (internal citations omitted); *Zilisch*, 995 P.2d at 279 ¶ 20 ("if an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith without regard to its ultimate merits") (internal quotation omitted).

207. For example: "No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented." AAC § 20-6-801(D)(1), quoted in *Nardelli*, 277 P.3d at 800 ¶ 55.

208. As a second example: "No agent shall conceal from first party claimants' benefits, coverages or other provisions of any insurance policy or insurance contract when the benefits, coverages or other provisions are pertinent to a claim." AAC § 20-6-801(D)(2), quoted in *Nardelli*, *supra*.[5]

209. As a third example: "No insurer shall request a first party claimant to sign a release that extends beyond the subject matter that gave rise to the claim payment." AAC § 20-6-801(D)(5).

210. Tesla breached the duty of good faith and fair dealing by failing to disclose the availability of or potential for equalized and/or stacked UM/UIM coverage under the Tesla Policies; misrepresenting, failing to disclose, and/or concealing equalized and/or stacked UM/UIM coverage in its communications with Plaintiffs and Class members; requesting releases in exchange for payments of UM or UIM limits; and denying the existence of any such equalized and/or stacked limits.

[5] *See also cases cited in Nardelli*, 277 P.3d at 800 ¶ 55: *Sarchett*, 729 P.2d at 275-77 ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *Shuman*, 370 N.E.2d at 956-57 (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

211. Tesla did so, despite knowing of, recklessly disregarding, or failing to investigate, evaluate, and inform itself of its failure to comply with Subsections (A), (B), and (H).

212. Tesla, therefore, acted in bad faith toward Plaintiffs and the Classes.

213. Plaintiffs and the Classes seek as compensatory damages the value of their unpaid UM/UIM equalized and/or stacked UM/UIM coverage benefits under Arizona law.

214. Tesla's conduct as to Plaintiffs and the Classes was aggravated, outrageous and it consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

215. Tesla is, therefore, liable to Plaintiffs and the Classes for punitive damages, which can be proven with common evidence.

216. This claim arises out of contract and Plaintiffs and the Classes therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiffs, both individually and on behalf of the Classes, demand a trial by jury on all claims so triable, and respectfully requests that the Court (i) certify the proposed Classes under Federal Rules of Civil Procedure 23(b)(2), (b)(3), and/or (c)(4) for declaratory relief, injunctive relief, damages, and/or the determination of common issues, (ii) designate Plaintiffs as representatives of the Classes, (iii) appoint Robert Carey of Hagens Berman as Class Counsel, and (iv) enter judgment in Plaintiffs' favor against Tesla including the following relief:

A. A declaratory judgment that Plaintiffs and the Classes are entitled to equalized UM/UIM limits as a remedy for Tesla's failure to comply with A.R.S. § 20-259.01(A) and (B), and entitled to stack UM/UIM coverages for multiple insured vehicles under a single Tesla Policy under A.R.S. § 20-259.01(H); that those rights declared under A.R.S. § 20-259.01 exist and must be honored for the rest of the contract term and in any renewal until rectified;

B. An order directing that Tesla is required to send notice to all UM and/or UIM Coverage Declaratory Relief and Remedial Notice Class members that outlines any additional coverage or rights declared by judgment in this litigation and explains and rectifies any misrepresentations or omissions in previous communications about the coverage and benefits available; that any signed releases in exchange for payment of UM or UIM limits are void and unenforceable for lack of consideration, unconscionability, or violation of Arizona law; and that Tesla is required to fully disclose and not misrepresent or conceal the availability of or potential for equalized and/or stacked UM/UIM coverages to them.

C. Compensatory damages for the Unequal Limits Damages Class and the Stacking Class. in an amount to be proven at trial.

D. Punitive damages as permitted by law.

E. An award of Plaintiffs' attorneys' fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

F. Statutory interest pursuant to A.R.S. § 20-462(A) from the date of the first payment till the date of judgment.

G. Costs and expenses incurred herein to the maximum extent permitted by law.

H. Any other pre-judgment and post-judgment interest afforded under the law to the maximum extent permitted.

I. Such other relief as the Court deems just and proper.

Dated: November 4, 2025

Respectfully submitted by,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Robert. B. Carey*

Robert B. Carey
John M. DeStefano
E. Tory Beardsley
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
johnd@hbsslaw.com
toryb@hbsslaw.com

THE SLAVICEK LAW FIRM
Brett L. Slavicek
Justin Henry
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Facsimile: (602) 287-9184
Email: brett@slaviceklaw.com
justin@slaviceklaw.com

*Attorneys for Plaintiffs*